**Frank BUTTITTA, Plaintiff,**

v.

**CITY OF CHICAGO, et al., Defendants.**

**No. 91 C 3952.**

United States District Court,
N.D. Illinois, E.D.

Sept. 30, 1992.

Rick Schoenfield, Schoenfield & Swartzman, Chicago, Ill., for plaintiff.

Patricia Carroll–Smit, Amy Neuman, Assistants Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

In 1986 an ankle injury forced police officer Frank Buttitta ("Buttitta") to go on disability leave. Buttitta has sued the city of Chicago ("City") and its police officials Hubert Holton ("Holton") and Richard Wedgbury ("Wedgbury") under 42 U.S.C. § 1983 ("Section 1983"), seeking to force his reinstatement to active duty and to collect damages for defendants' past refusal to reinstate him.

Buttitta now moves for summary judgment as to liability under Fed.R.Civ.P. ("Rule") 56, while defendants move for summary judgment on the merits. For the reasons stated in this memorandum opinion

and order, Buttitta's motion is denied, defendants' cross-motion is granted and this action is dismissed.

### Facts [1]

Buttitta joined the Chicago Police Department ("CPD") in 1967. He went on the CPD Medical Roll after injuring his ankle in March 1986.[2] On September 5, 1987 he was awarded duty disability benefits by the Retirement Board of the Policeman's Annuity and Benefit Fund (the "Board")—an action that removed him from the Medical Roll and thus from active CPD duty. While on duty disability Buttitta received 75% of his normal salary (B. 12(m) ¶¶ 1–6). It would appear that the ankle injury was work-related, for otherwise he would not have been entitled to duty disability under the governing statute (Ill.Rev.Stat. ch. 108½, ¶ 5–154 [3]).

On May 24, 1989 orthopedic surgeon Dr. Richard Brash advised Buttitta that he could return to work as of May 31 (B. 12(m) ¶ 8).[4] On June 7 Dr. S. David Demorest, the Board's staff physician, examined Buttitta and concurred with Dr. Brash (B. Ex. A):

> At this time, I find no reason to continue disability and recommend that Officer Buttitta return to the police department.

Three weeks later, by letter dated June 29, the Board's Executive Director James Waters ("Waters") communicated the Board's concurrence with those conclusions to Hol-

---

**1.** Each party has filed the factual statement required by this District Court's General Rule ("GR") 12(m)–(n). Buttitta's statement is cited as "B. 12(m)" and defendants' responsive statement as "D. 12(n)". Defendants have also filed an additional statement of facts, cited as "D.Supp. 12(n)". "B." and "D." are also used to refer to the parties' Exhibits and memoranda.

**2.** Chicago Municipal Code ("Code") § 2–84–480 (1990) provides that an officer injured in the line of duty may receive full salary for up to 12 months following the injury. Though nothing in the record explains precisely what it means to be on the Medical Roll, presumably Buttitta went from the full-salary status dictated by the Code to the part-salary status provided for by state law after his 12 months' eligibility under the local ordinance had expired.

**3.** Further citations to provisions in Chapter 108½ will take the form "Section—." That usage comports with the Illinois General Assembly's use of that word and of the symbol "§" in its enactments, even though the publisher of the Smith–Hurd annotated version of the Illinois statutes has chosen to shift to "¶" instead.

**4.** Defendants contest this fact, noting that no reports from Dr. Brash appear in the record (D. 12(m) ¶ 8). But the Board's own physician and the Board itself relied on Dr. Brash's recommendation, or at least on Buttitta's paraphrase of the recommendation, when it returned Buttitta to the CPD for assignment in 1989 (B. Exs. A, B). This opinion therefore accepts the existence of the recommendation as a fact.

ton, Commander of the CPD's Personnel Division (B. Ex. B):

[O]n the recommendations of Dr. Demorest and Dr. Brash we are returning Officer Buttitta to you for assignment, in accordance with the provisions of Chapter 108½, Article 5-156 of the Police Pension Act.

Buttitta then underwent blood chemistry tests on July 7. Reviewing the test results, Dr. Demorest concluded that Buttitta suffered from "an abnormality of liver enzymes" as well as elevations of uric acid, blood sugar and cholesterol—problems that might signal mild diabetes or alcohol-related liver injury, among other conditions (B. Ex. D):

It is my recommendation that Mr. Buttitta follow-up with his personal physician regarding these abnormalities.... Hopefully these problems will lend themselves to correction and hopefully [he] will be able to then reapply for [a] position with the police department.

Dr. Demorest did not specifically say whether he thought the "abnormalities" precluded Buttitta from active police duty.

After Buttitta had undergone a physical examination by the CPD's Medical Services Section, Holton wrote to him on July 13 (B. Ex. C):

Reinstatement to the Department is contingent upon meeting the standard of being able to perform unrestricted police duties. The examination [by the CPD] discloses significant elevation of hepatitic enzymes, indicative of an active inflammatory process in the liver. Advise work-up and treatment before proceeding with medical review.

Because of the above cited variables, your reinstatemnt [sic] to the Department will not be granted.

CPD officials uniformly agreed with the Board's determination that Buttitta was no longer disabled by the ankle injury (B. 12(m) ¶ 14).

On October 26, 1989 the Board reduced Buttitta from "duty disability" to "ordinary disability" (B. Ex. E). That change reflected the fact that Buttitta was now disabled for reasons unrelated to his police

service. Any officer on ordinary disability receives 50% of salary rather than the 75% enjoyed by an officer on duty disability (Section 5-155).

Two more physical examinations followed. First Buttitta's personal physician, Dr. Hillary Neybert, examined him on February 25, 1991 and summarily declared him "fit for active police service" (B. Ex. F). Then Dr. Demorest saw him again on March 16, 1991, but his report offered no opinion on Buttitta's fitness for duty (B. Ex. G):

It would thus seem that his prior liver enzyme elevation has not resolved. Officer Buttitta was denied reinstatement by the police surgeon previously due to elevated enzymes. His condition remains unchanged, albeit not serious. I would be interested in hearing the police surgeon's comments.

On May 2, 1991 the Board again returned Buttitta to the CPD "for assignment" (B. Ex. H). This time Waters communicated the Board's conclusion by letter to Wedgbury, the CPD's personnel administrator. Waters specified that the Board was relying on Dr. Neybert's recommendation. He did not mention what weight, if any, the Board gave to Dr. Demorest's more cautionary report.

Again the CPD conducted its own physical exam, and again it refused reinstatement. In a letter dated June 4, 1991 Wedgbury cited "continued elevation of liver enzymes indicative of liver dysfunction" as grounds for the refusal (B. Ex. I).

Dr. Demorest examined Buttitta for the third time on February 21, 1992. Buttitta admitted to drinking 12 beers a day, though he was trying to cut back. Dr. Demorest concluded (B. Ex. J, emphasis added):

Officer Frank Buttitta has liver induced injury secondary to his alcohol intake (alcoholic hepatitis). I believe this gentleman has a much greater problem than previously realized. I also believe that he down plays [sic] the amount of alcohol and the problem alcohol has in his life. *Based on his current exam and blood*

*test, Officer Buttitta is unable to return to full active police duty.*

No later medical reports appear in the record.

On May 19, 1992 Buttitta's counsel wrote to Waters to request "a full hearing from the Board regarding Officer Buttitta's fitness" for active duty (B. Ex. K). He asserted that Buttitta had stopped drinking and had received counseling regarding his alcohol use. No response to that request is reflected in the record.

Despite returning Buttitta to the CPD for "active service," the Board has made disability payments to Buttitta without interruption from September 5, 1987 to the present (Waters Aff. ¶ 2). There is some dispute about whether such continuing payments reflect the Board's judgment that Buttitta remains disabled. It appears that the Board continued to pay his disability benefits in 1989—despite returning him to the CPD for active service on June 29 of that year—merely to ensure that he would have some income until his reinstatement took effect (B.R.Mem. 2, citing Waters Dep. 24–25, 35–36, 43). Since the CPD declined to reinstate Buttitta in 1991, the Board has continued to make the disability payments because it believes that Buttitta suffers from a disabling liver condition (Waters Aff. ¶ 3).

### Procedural Background

Buttitta filed his three-count Complaint on June 25, 1991 to recover damages, fees and costs, as well as seeking a mandatory injunction reinstating him to active duty. Count I related to the CPD's 1989 decision not to reinstate Buttitta and named Holton as defendant. Count II related to the similar decision in 1991 and named Wedgbury as defendant. Finally, Count III charged that both the 1989 and 1991 actions stemmed from City's "policy or custom" of conducting its own medical review to determine whether an officer deemed no longer disabled by the Board is actually fit for duty. That allegation, if proved, would make City liable for the actions of Holton and Wedgbury (*Monell v. Department of Social Services of the City of New York,*

436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

After discovery Buttitta filed his present motion, seeking summary judgment as to liability only. That motion is now fully briefed (defendants having obtained leave to file a brief surreply memorandum). At the close of their brief in opposition to Buttitta's motion, defendants requested summary judgment or, in the alternative, denial of Buttitta's motion. That motion too is ripe for decision.

### Rule 56 Standards

■ Rule 56 requires this Court to rule in favor of the moving party if "there is no genuine issue as to any material fact and ... [he] is entitled to a judgment as a matter of law." "Genuine" issues exist if the record evidence would permit a reasonable factfinder to adopt the view of the nonmoving party (*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Old Republic Ins. Co. v. Federal Crop Ins. Corp.,* 947 F.2d 269, 274 (7th Cir.1991.)). "As to materiality, the substantive law will identify which facts are material" (*Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; see also *Pritchard v. Rainfair, Inc.,* 945 F.2d 185, 191 (7th Cir.1991)).

■ It is the movant's burden to establish the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). In deciding whether that burden has been met, the court must draw "all reasonable inferences" in favor of the nonmovant (*Allensworth v. General Motors Corp.,* 945 F.2d 174, 178 (7th Cir. 1991)), and must resolve factual disputes in the nonmovant's favor as well (*Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513 ("evidence of the nonmovant is to be believed")). Where as here cross-motions are involved, the court must extend to each party the benefit of any factual doubt when considering the other's motion—a Janus-like perspective that sometimes forces the denial of both motions, but that does not produce such a frustrating result here.

### Statutory and Constitutional Framework

 It is well-settled that a state may confer on its employees a degree of job security so great that the job becomes a form of "property" within the meaning of the Due Process Clause of the Fourteenth Amendment (*Board of Regents v. Roth,* 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Hohmeier v. Leyden Community High Schools Dist. 212,* 954 F.2d 461, 463–65 (7th Cir.1992)). When a job becomes "property" the state may not take it away without notice and a hearing—though "this procedure need not be elaborate and can be satisfied with less than a full evidentiary hearing" (*Smith v. Town of Eaton,* 910 F.2d 1469, 1472 (7th Cir.1990), citing *Cleveland Board of Educ. v. Loudermill,* 470 U.S. 532, 547, 105 S.Ct. 1487, 1496, 84 L.Ed.2d 494 (1985)). Failure to provide due process is actionable under Section 1983, the all-purpose statutory vehicle for compensating the victims of constitutional torts.

> Section 5–156 provides in relevant part: A disabled policeman who receives duty or ordinary disability benefit shall be examined at least once a year by one or more physicians appointed by the board. When the disability ceases, the board shall discontinue payment of the benefit, and the policeman shall be returned to active service.

Buttitta claims that the final sentence of Section 5–156 confers a property interest in reinstatement upon any officer whom the Board finds no longer disabled. He says that the CPD may challenge the Board's conclusion that an officer is not disabled via judicial or administrative review, but not by internal fiat.

But defendants do not read "returned to active service" as requiring automatic reinstatement to active duty. CPD General Order 90–5 requires that any officer who seeks to return to duty after more than 30 days' inactivity must submit to a physical and/or psychological examination by the CPD's Medical Services Section (D. 12(n) ¶ 13; D. Ex. B). Pursuant to that policy the CPD will not reinstate an officer unless he or she is "able to perform unrestricted police duties" (B. Ex. I).

Defendants followed that policy in Buttitta's case. CPD officials did not seek judicial review of the Board's determinations, nor did they offer Buttitta a hearing before declining to reinstate him. Instead they simply referred Buttitta back to the Board for continued disability payments.

### Construction of the Statute

In any due process case where the deprivation of property is alleged, the threshold question is whether a property interest actually exists. In that respect Buttitta's is a case of first impression. No reported decisions of any court have considered whether Section 5–156 creates the property interest that is claimed here.

 As a general rule, "[p]roperty interests exist when an employer's discretion is clearly limited so that the employee cannot be denied employment unless specific conditions are met" (*Colburn v. Trustees of Indiana University,* 973 F.2d 581, 589–90 (7th Cir.1992)). Paragraph 5–156 mandates a "return[ ] to active service" once the Board determines that an officer's original disability has ceased. Thus the discretion of the CPD to refuse reinstatement to an officer referred back to it by the Board is "clearly limited"—but how much and in what respects?

Answering that question calls for a fresh look at the final sentence of Section 5–156:

> When the disability ceases, the board shall discontinue payment of the benefit, and the policeman shall be returned to active service.

Buttitta reads the phrase "returned to active service" to require actual reinstatement to the CPD, carrying with it a return to full salary, benefits and seniority accrual (if not an actual return to police duty). After reinstatement, he concedes, the CPD may return an officer to disability status (B.R.Mem. 3).

Defendants instead interpret a "return[ ] to active service" by the Board as a starting point for the CPD's internal review. At that time the CPD medical staff may

determine that the officer remains unfit for duty—at least if that determination is based on a new or different disability not evaluated by the Board.[5] Defendants assert the right simply to return the officer to the Board's jurisdiction for the continuance of disability payments.

What is really in dispute here?

If the argument is over who decides when an officer is ready for actual policing duties, there can be no doubt that the last word must remain with the CPD. Any construction of the term "returned to active service" that places such decision-making power with the Board would defy common sense. For the CPD—as the agency directly responsible for guaranteeing the public safety—must have the authority to decide whether an officer is physically able "to serve and protect" Chicago's citizenry.

 Section 5–156 empowers the Board to decide only whether "the disability"—the medical ground for an officer's original placement on the disability rolls—has ceased to exist. Nothing in the language or logic of the statute empowers the Board to make a general finding of fitness for actual police duty. Therefore the phrase "returned to active service" cannot be construed as a mandate to restore an officer automatically to full active duty or to the salary, benefits and seniority that normally accompany full active duty.

If the argument is rather over what formalities the CPD must follow once the Board certifies that an officer's disability has ceased, then Buttitta's case suffers from a different infirmity: He has failed to prove any injury. B.R. Mem. 3 states:

> [D]efendants are partially correct when they assert that they can have an officer medically examined and that the Police Department can assert that an officer has a new disability. However, that does not mean that the defendants can veto the Board's decision. It simply means

that once an officer is reinstated pursuant to the Board's statutory determination, the officer may be treated like any other active officer.

But that statement begs the question of how "any other active officer" would be treated.

According to defendants' undisputed evidence, any officer returning to duty after more than 30 days' inactivity must go through the same procedure that Buttitta went through. First the CPD Medical Section determines the officer's fitness for active duty. Then the officer is placed, as appropriate, on active duty or on the disability rolls.

 Let it be assumed arguendo that Section 5–156 requires full reinstatement before the CPD can return an officer to disability status. It is still undisputed that the CPD believed Buttitta to be disabled— for a reason wholly different from the one on which the Board was opining—on both occasions when the Board returned him for "active service." Thus the CPD would immediately have placed him on disability on both occasions, and the question becomes what form of benefits Buttitta would have received.

Buttitta did not incur his liver ailment in the line of duty. Hence the CPD could not have awarded him 12 months of full-salary benefits under Code § 2–84–480, nor the 75% of salary awarded to officers on duty disability under Section 5–154. Instead he could only have been placed on ordinary disability, which pays 50% of salary.[6] That is exactly what he did get and what he is getting today.

For Buttitta, then, reinstatement would have been nothing but a fleeting way station en route to the very disability status that he now occupies. No additional salary, benefits or seniority could have flowed to him from a purely technical act of reinstatement immediately followed by a new declaration of disability. Therefore he has

---

**5.** It may well be that Section 5–156 forbids the CPD from second-guessing the Board's finding that the *original* disability has ceased. But this case does not present that issue. All parties agree that Buttitta's ankle has healed.

**6.** If any other form of disability benefit is available, Buttitta's counsel has not so indicated. Likewise, the CPD's assertion that its policies allow it unilaterally to place a returning officer on disability—without a hearing or any sort of process—stands unrebutted.

**220**

not been "deprived" of anything within the meaning of the Due Process Clause.

Granted, Buttitta has not attempted to establish the full scope of his damages on the present motion. He only seeks to prove liability. But to show liability it is still necessary to show *some* deprivation of property. Buttitta has shown none.

 In short, this Court agrees with defendants' interpretation of the statute. Section 5–156 does not mandate that a once-disabled police officer must automatically be returned to full-fledged active status once the Board finds that the original disability has ceased, so long as the CPD determines that the officer suffers from a *different* disability. Nor does the statute dictate that an officer must be reinstated to full salary and benefits pending the outcome of the CPD's own medical review. Finally, even if the statute does mandate such a provisional reinstatement, in Buttitta's case there is not even a hint that the reinstatement would have provided any tangible benefit to him. Buttitta has gotten his due.

### Conclusion

There is no genuine issue of material fact, and defendants are entitled to a judgment as a matter of law. Judgment is granted for all defendants on all counts. This action is dismissed.