Russell **BRIDENBAUGH**, Jim Davis, John Davis, Melissa Davis, William H. Friday, Gregory Kasza, Joseph Keough, Loyce Keough, David Sabbagh, John Scanlan, Linda Simon, Robert Swanson, and Martha A. Sykes, Plaintiffs,

v.

Frank **O'BANNON**, Governor of Indiana, in his official capacity,[1] Jeffrey Modisett, Attorney General of Indiana, in his official capacity, and John F. Hanley, Director of the Indiana Alcoholic Beverage Commission, in his official capacity, Defendants,

and

Wine & Spirit Wholesalers of Indiana, Intervenor–Defendants.

No. 3:98 CV 00464 AS.

United States District Court, N.D. Indiana, South Bend Division.

Dec. 10, 1999.

1. The Governor was dismissed from this action by Court Order of April 16, 1999.

William L. Wilson, Hahn Walz Knepp Dvorak and Higgins, South Bend, IN, Jeffrey L. Marchal, Robert D. Epstein, Epstein and Frisch, Indianapolis, IN, James A. Tanford, Indiana University School of Law, Bloomington, IN, for Plaintiffs.

Angela L. Mansfield, Beth H. Henkel, David A. Arthur, Indiana Attorney General, Indianapolis, IN, for Defendants.

William C. Barnard, Gordon L. Pittenger, Maggie L. Smith, Sommer and Barnard, Indianapolis, IN, for Intervenor-Defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

The complaint in this case was originally filed by Plaintiffs on August 28, 1998 invoking this Court's Federal jurisdiction by asserting that certain statutes relating to the distribution of alcoholic beverages in Indiana were in violation of the Commerce Clause in Article I of the Constitution of the United States. The case has now been pending for over a year. All relevant issues have been fully briefed and interesting and helpful oral argument was heard in South Bend, Indiana on December 6, 1999. The case is now ripe for ruling on the parties' cross motions for summary judgment.

Plaintiffs brought this suit to challenge the constitutionality of Indiana Statute section 7.1–5–11–1.5 which became effective in August, 1998 and made it unlawful for persons in another state or country to ship an alcoholic beverage directly to an Indiana residence.[2] Plaintiffs assert that

---

2. The text of the relevant statute provides as follows:

(a) It is unlawful for a person in the business of selling alcoholic beverages in another state or country to ship or cause to be shipped an alcoholic beverage directly to an Indiana resident who does not hold a valid wholesaler permit under this title. This includes the ordering and selling of alcoholic beverages over a computer network (as defined by IC 35–43–2–3(a)).

(b) Upon a determination by the commission that a person has violated subsection (a), a wholesaler may not accept a shipment of alcoholic beverages from the person for a period of up to one (1) year as determined by the commission.

A related statute referred to by defendants criminalizes a violation of the above the above statute and provides that "a person who is not an 'in state or an out of state vintner, distiller, brewer, rectifier, or importer that holds a basic permit from the federal

the new statute violates the Commerce Clause as it deprives them of their constitutional right to engage in interstate commerce without undue interference by state law.

Plaintiffs are all Indiana residents over the age of twenty-one. Plaintiffs state that they are all "wine collectors," and that Plaintiff Bridenbaugh is also a professional wine critic and journalist. Prior to the enactment of the statute, plaintiffs all purchased out of state wines from wineries, wine clubs and other sources and were able to have those wines shipped directly to their residences. Additionally, various sources frequently sent free wine samples to Bridenbaugh so that he could critique them and write a review. Since the statute became effective plaintiffs claim they are hampered in their wine collecting because many of the wines they seek to purchase are unavailable in Indiana stores. Additionally, plaintiffs assert that they are now unable to purchase wines while traveling and have the purchase shipped home. Finally, plaintiff Bridenbaugh claims the statute interferes with his ability to engage in his profession.[3]

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Russo v. Health, Welfare & Pension Fund, Local 705,* 984 F.2d 762 (7th Cir.1993). The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celo-*

*tex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts shows that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920–21 (7th Cir.1994); *Hughes v. Joliet Correctional Ctr.,* 931 F.2d 425, 428 (7th Cir.1991), nor may that party rely upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992).

Where, as here, cross-motions for summary judgment have been submitted by the parties, the court is not required to grant judgment as a matter of law for one side or the other. *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir. 1993); *Judsen Rubber Works, Inc. v. Manufacturing, Prod. & Serv. Workers Union Local No. 24,* 889 F.Supp. 1057, 1060 (N.D.Ill.1995). Rather, the court must evaluate each party's motion on its own merits, resolving factual uncertainties and drawing all reasonable inferences against the party whose motion is under consideration. *Heublein,* 996 F.2d at 1461; *Judsen,* 889 F.Supp. at 1060; *Buttitta v. City of Chicago,* 803 F.Supp. 213, 217 (N.D.Ill. 1992), *aff'd,* 9 F.3d 1198 (7th Cir.1993). Applying this standard the Court addresses the cross-motions for summary judgment.

Bureau of Alcohol, Tobacco, and Firearms' and who knowingly violates IC 7.1–5–11–1.5 (the challenged statute here) commits a Class D felony." *See* I.C. 7.1–5–1–9.5(b).

**3.** Bridenbaugh is a magazine "wine critic" and as a result must sample and rates various

wines. There does not appear to be a problem with the standing of these plaintiffs, or at least some of them, to challenge this statute. This issue was fully addressed by this Court. *See* Court Order of April 16, 1999.

## DISCUSSION

Conceptually, this case involves the interplay between the reserved police power of the states under both the Tenth and Fourteenth Amendments of the Constitution of the United States with the Commerce Clause, and more particularly, with the second section of the Twenty–First Amendment which provides:

Section 1. The eighteenth article of amendment to the Constitution of the United States is hereby repealed.

Section 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

Section 3. This article shall be inoperative unless it shall have been ratified as an amendment to the Constitution by conventions in the several States, as provided in the Constitution, within seven years from the date of the submission hereof to the States by the Congress.

U.S.C.Amend. XXI.

This court can take judicial notice of the historic setting of the this Amendment, which brought to an end national prohibition once described by Herbert Hoover as "A Noble Experiment." Clearly, the second section of this Amendment had as its legislative purpose to permit states to regulate by local option, or indeed enforce statewide prohibition in regard to alcoholic beverages. Neither of those concepts have any bearing whatsoever to this case. This Court conceives this case as a straight forward application of the Commerce Clause as it may apply to state authority to regulate this particular species of commerce.

This Court is in complete agreement with the suggestion made by Judge Edith Jones in *Cooper v. McBeath*, 11 F.3d 547 (5th Cir.1994), *cert. denied by McBeath v. Cooper*, 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994), that the Twenty–First Amendment does not necessarily immunize state liquor control laws from invalidation under the commerce clause. The chief question is whether the interests implicated by a state's regulation are so closely related to the powers reserved by the Amendment that the regulation may prevail, notwithstanding the fact that its requirements directly conflict with express federal policy. 11 F.3d 547, 555 (quoting *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 714, 104 S.Ct. 2694, 2708, 81 L.Ed.2d 580 (1984)). *See also California Retail Liquor Dealers Ass'n v. Midcal Aluminum*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980). "[O]ne thing is certain: The central purpose of the [Amendment] was not to empower States to favor local liquor industries by erecting barriers to competition." *Bacchus Imports v. Dias*, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984). Cases such as *Capital Cities* and *Bacchus* demonstrate, the key aspect of the accommodation test is the determination of whether the law was passed under a core Twenty–First Amendment power. 467 U.S. 691, 104 S.Ct. 2694; 468 U.S. 263, 104 S.Ct. 3049. Thus, evaluating any state alcohol regulation requires an understanding of just what the Twenty–First Amendment's core powers are. Recent lower court cases have demonstrated that temperance is the core purpose of the Twenty–First Amendment. *Quality Brands v. Barry*, 715 F.Supp. 1138 (D.D.C.1989), *aff'd*, 901 F.2d 1130 (D.C.Cir.1990); *Loretto Winery v. Gazzara*, 601 F.Supp. 850, 861 (S.D.N.Y.), *aff'd and modified as to remedy sub nom. Loretto Winery v. Duffy*, 761 F.2d 140 (2d Cir.1985); *Cooper*, 11 F.3d 547. This Court is greatly impressed with the reasoning of the Fifth Circuit in regulating alcoholic beverages in Texas and believes that the reasoning applies here. Thus, it is the conclusion of this Court that the State of Indiana cannot look to the Twenty–First Amendment for the constitutional salvation of the state statutes in question.

Although numerous decisions of the Supreme Court have been cited there are some salient decisions that need to be discussed. It's no secret that *Gibbons v.*

*Ogden;* 22 U.S. 1 (9 Wheat.), 6 L.Ed. 23(1824), fundamentally went off on the question of federal supremacy of a federal statute under Article VI of the Constitution. There is no such federal statute involved here. No one is here arguing that the United States Congress has preempted state alcoholic beverage regulation. The statutes here in question can only be saved under the reserved police power of the state, and in this case, that is not enough. For whatever reason, the General Assembly of Indiana has chosen to discriminate as between in state (Indiana) and out of state purveyors of alcoholic beverages. The Deputy Attorney General arguing this case seemed to place most of his eggs in the "permit" basket saying that in order to engage in this kind of distribution, one must have an Indiana permit. The flaw in this argument is that permits simply are not granted to out of state distributors and at that point, there is an interference with interstate commerce that cannot be gainsaid under the Commerce Clause.

This court is now, and has always been, greatly reluctant to wield the Federal Constitution ax against State legislation. *See* dissent of first Justice Harlan in *Civil Rights Cases, In re,* 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). But here, that result is inescapable because these statutes on their face discriminate against out of state commerce. This clearly violates the Commerce Clause of the Federal Constitution. The actions of the General Assembly of Indiana, here go well beyond the simple kind of police power regulation authorized by the Taney court in *Mayor, Aldermen and Commonalty of City of New York v. Miln,* 36 U.S. 102 (11 Pet.), 9 L.Ed. 648 (1837). Likewise, this state regulation is also different than the one approved by Justice Curtis in *Cooley v. Board of Wardens of Port of Philadelphia,* 53 U.S. 299

(12 How.), 13 L.Ed. 996 (1851). Although not particularly relevant to modern times, the early reasoning and result of Chief Justice Fuller in *Leisy v. Hardin,* 135 U.S. 100, 10 S.Ct. 681, 34 L.Ed. 128 (1890), now that the nation has been through national prohibition and its repeal, may say more about the dimensions of the Commerce Clause and the dispensing of intoxicating liquors than once was imagined. In purely modern conceptual terms the state here is clearly acting as a market regulator and not as a market distributor. In *New England Power Co. v. New Hampshire,* 455 U.S. 331, 102 S.Ct. 1096, 71 L.Ed.2d 188 (1982), the court clearly reaffirmed the view that the Commerce Clause precludes a state giving residents a preferred right of access to its natural resources or products derived therefrom. While this case does not involve a natural resource, it is a case where the state has given preferred treatment to its residents over non-residents. For all of these reasons, this Court has no choice but to declare these Indiana statutes in conflict with the Commerce Clause in Article I of the Constitution.[4]

### CONCLUSION

Judgement shall accordingly enter for Plaintiffs and against Defendants. Each party will bear its own costs.

IT IS SO ORDERED.

---

**4.** This result is fully explicated and supported by a careful, in depth discussion in Vijay Shanker, *Alcohol Direct Shipment Laws, The Commerce Clause and the Twenty First Amendment,* 85 Va.L.Rev. 353 (March 1999). A single concluding sentence there is highly relevant here: "There is only one reason to distinguish alcohol from other commodities in terms of federal power over interstate commerce: the state's interest in promoting temperance." *Id.* at 382. Temperance is not the issue in the case now before this Court.