**Johnny TILSON, Plaintiff–Appellant,**

v.

**CITY OF ELKHART, INDIANA and Mark DeJong, Defendants–Appellees.**

No. 03–2938.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 18, 2004.

Decided April 23, 2004.

Douglas M. Grimes, Gary, IN, for Plaintiff-Appellant.

Dane L. Tubergen, Hunt Suedhoff Kalamoros, Fort Wayne, IN, for Defendants–Appellees.

Before COFFEY, EASTERBROOK, and EVANS, Circuit Judges.

## ORDER

Johnny Tilson sued the City of Elkhart, Indiana, and Elkhart police officer Mark DeJong under 42 U.S.C. § 1983 for violating his Fourth Amendment right to be free from unreasonable seizures after DeJong's K–9 bit and held Tilson while Tilson was trying to evade arrest. The district court granted summary judgment to Elkhart and DeJong. Tilson appeals, and we affirm.

### I. Background

Tilson got off work at 2 P.M. on October 15, 1999, and started partying. Tilson drank heavily the entire afternoon and into the early evening hours. Around 8:30 P.M., K–9 Officer DeJong was on routine patrol duty when he noticed a now-drunk Tilson trying to wedge his Cadillac into a parking place that was too small for the vehicle. Tilson apparently realized that DeJong was watching him, so he abandoned his futile parking efforts, swung his car around, and drove up over the curb on the opposite side of the street. DeJong of course noticed Tilson's moving violation, and also suspected that Tilson was driving while intoxicated. Based on these observations, DeJong decided to initiate a traffic stop. DeJong pulled up behind Tilson's vehicle and activated his lights.

Tilson continued driving for a block and a half despite DeJong's attempts to pull him over. When Tilson did stop, he got out of his vehicle and started yelling at DeJong. DeJong called for back up, turned his spotlight on Tilson, and—using his P.A. system—directed Tilson to get back in his car, turn off the engine, and toss his keys onto the street. Tilson did get back in his car, but then abruptly drove off. DeJong followed Tilson and

watched as Tilson turned his vehicle into the back yard of a house. Tilson then stopped his car, got out, and started running (his ambulatory skills were not visibly affected by his inebriated state). DeJong also stopped, exited his vehicle, and—with his K–9 Baak—chased Tilson. DeJong warned Tilson that if he did not stop running, DeJong would release Baak. Tilson did not comply, and after yelling "Stop K–9, Stop K–9," DeJong released Baak and ordered him to bite and hold Tilson. Baak caught Tilson and bit and held him until DeJong arrived and put Tilson on the ground. DeJong then ordered Baak to release his bite, and called an ambulance for Tilson because Tilson was bleeding heavily from the bite wound.

The hospital staff determined that Baak had punctured Tilson's femoral artery, which explained the heavy bleeding. Further tests at the hospital revealed that Tilson's blood alcohol level was .344 percent (more than 4 times the State of Indiana legal limit for driving, .08 percent, see Ind.Code § 9–30–5–1). Tilson was charged with driving under the influence of alcohol and public intoxication.

Tilson then sued Elkhart and DeJong[1] under 42 U.S.C § 1983.[2] Tilson alleged that DeJong's used of a K–9 to apprehend him was excessive force and a violation of his Fourth Amendment right to be free from unreasonable seizures, and that Elkhart's custom and practice of using K–9 units to effectuate unconstitutional seizures was the cause of (or moving force

behind) his injuries. After discovery the defendants moved for summary judgment, which the district court granted after Tilson failed to file a response. Tilson then filed a motion to reconsider under Fed. R.Civ.P. 59, which the court granted.

Upon reconsideration, however, the court affirmed its grant of summary judgment to the defendants. The court determined that DeJong did not use excessive force or unreasonably seize Tilson, and that even if DeJong's use of a K–9 to seize Tilson was an unreasonable seizure, DeJong would have been entitled to qualified immunity. Thus DeJong was not liable for Tilson's injuries. The court also determined that, even if Tilson had established a constitutional injury, Elkhart could not be liable because Tilson failed to establish that Elkhart was aware of a pattern of constitutional violations resulting from its custom or policy of using K–9 units to effectuate arrests. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, the court concluded, neither DeJong nor Elkhart was liable for any injuries Tilson suffered as a result of Baak's bite.[3]

## II. Issues

On appeal, Tilson argues that the district court erred in granting summary judgment to the defendants because: 1) there was a genuine dispute of material fact as to whether DeJong was justified in using his K–9 to apprehend Tilson; 2)

---

**1.** Elhkart police officer Peggy Posthuma was also a named defendant, but was dismissed from the case with prejudice under Fed. R.Civ.P. 41. Posthuma is not a party to this appeal.

**2.** Tilson also sued the defendants under 42 U.S.C. § 1988, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and various provisions of the Indiana State Constitution. Additionally, Tilson alleged state law violations.

Tilson does not press any of these claims on appeal, however, so we limit our discussion to his excessive force claim.

**3.** The district court entered judgment under Fed.R.Civ.P. 58 & 79(a). Thus the court's order was final and appealable under 28 U.S.C. § 1291. *FirsTier Mortgage Co. v. Investors Mortgage Ins. Co.*, 498 U.S. 269, 277, 111 S.Ct. 648, 112 L.Ed.2d 743 (1991).

DeJong was not entitled to qualified immunity because Tilson's right to be free from excessive force under the Fourth Amendment is well-established; and 3) he demonstrated a pattern of constitutional deprivations caused by Elkhart's custom and practice of using K–9's to apprehend criminal suspects. Because we agree with the district court that DeJong did not use excessive force when he arrested Tilson, we need only address Tilson's first argument.

*III. Analysis*

As a preliminary matter, we note that DeJong's use of a K–9 to bite and hold Tilson until DeJong could apprehend him is not an unconstitutional (or unreasonable) seizure *per se,* as Tilson suggests. *See Miller v. Clark County,* 340 F.3d 959, 962 (9th Cir.2003); *Kuha v. City of Minnetonka,* 328 F.3d 427, 434 (8th Cir.2003); *Jarrett v. Town of Yarmouth,* 331 F.3d 140, 150 (1st Cir.2003); *Vera Cruz v. City of Escondido,* 139 F.3d 659, 663 (9th Cir. 1997); *Vathekan v. Prince George's County,* 154 F.3d 173, 178 (4th Cir.1998); *Matthews v. Jones,* 35 F.3d 1046, 1051 (6th Cir.1994); *Kerr v. City of West Palm Beach,* 875 F.2d 1546, 1553 (11th Cir.1989); *Robinette v. Barnes,* 854 F.2d 909, 913 (6th Cir.1988); *Mason v. Hamilton County,* 13 F.Supp.2d 829, 835 (S.D.Ind.1998). Indeed, we have never held that any use of force by a law enforcement officer is *per se* unconstitutional (or unreasonable). *Cf. Chew v. Gates,* 27 F.3d 1432, 1443 (9th Cir.1994) (whether use of K–9 to apprehend suspect was reasonable is not "determinable as a matter of law"). Rather, we adhere to the admonitions of the Supreme Court in *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), and evaluate all claims that an officer has used excessive force to apprehend a suspect-be it deadly or non-deadly force-according to the facts of each individual case, and under the Fourth Amendment's standard of objective reasonableness. *Deering v. Reich,* 183 F.3d 645, 650 (7th Cir.1999). In doing so, the relevant inquiry is whether the officer's [DeJong's] actions were "objectively reasonable in light of the facts and circumstances confronting [him]." *Graham,* 490 U.S. at 397. The circumstances are viewed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. In conducting this inquiry, we consider: 1) the severity of the suspected crime; 2) whether the suspect poses an immediate threat to the officer on the scene or others; and 3) whether the suspect is "actively resisting or attempting to evade arrest by flight." *Id.* at 396.

Here DeJong reasonably suspected that Tilson was driving under the influence, which is a serious offense that poses an immediate threat to the officer on the scene and others nearby. *See Smith v. Ball State Univ. Bd. of Tr.,* 295 F.3d 763, 770 (7th Cir.2002); *United States v. Rutherford,* 54 F.3d 370, 377 (7th Cir.1995). Based on his observation of Tilson's aborted attempt to park his Cadillac and apparent intoxicated state, DeJong had probable cause to stop Tilson and further investigate his suspicion that Tilson was driving under the influence of alcohol or drugs. *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Had the stop proceeded without incident, DeJong would have discovered that Tilson was driving with a blood alcohol content of .344—more than *four times* the legal limit—which is a class A misdemeanor in Indiana, *see* Ind.Code § 9–30–5–1(b).[4] But

---

**4.** As DeJong would later discover, Tilson had previously been convicted of driving while intoxicated, which means that Tilson's offense

the stop did not proceed without incident. Tilson refused to stop when ordered to do so by DeJong and instead resisted arrest by fleeing in his vehicle, a Class D felony in Indiana, *see* Ind.Code § 35–44–3–3. Thus the crimes that DeJong suspected Tilson of committing were sufficiently severe to allow DeJong to use force if needed to arrest Tilson to protect himself and others.

But Tilson contends that force was not required under the circumstances because DeJong did not regard Tilson as an immediate threat to his safety (DeJong admitted as much in his deposition), and he therefore posed no physical danger to DeJong. Tilson also contends that, because of his intoxicated state, there is a disputed issue of fact as to whether he was even capable of "actively resisting arrest or attempting to evade arrest by flight." (Pet'r Br. at 26.) And Tilson further argues that, in his intoxicated state, he lacked the mental faculties to form the intent to resist arrest. All of these arguments, however, necessitate a subjective inquiry into the circumstances surrounding the seizure, an inquiry that is impermissible under the Fourth Amendment standard of objective reasonableness. Tilson's subjective intent, and DeJong's subjective fears, are irrelevant to our analysis as "the question is whether the officer's actions are *'objectively reasonable'* in light of the facts and circumstances" confronting him at the particular time, *"without regard to [his] underlying intent or motivation." Graham,* 490 U.S. at 397 (emphasis added).

In any event, Tilson is hardly in a position to comment on the severity of the circumstances that DeJong faced in attempting to apprehend him. Tilson's memories of the day's events, he admits, are limited: he knows he left work and went drinking for several hours, he vaguely recalls seeing a police car while he was driving, and the next thing he remembers is being bitten by a dog and waking up in the hospital. Thus Tilson's observations cannot serve as the basis for a factual dispute, and DeJong's recitation of events is more reliable than any hindsight inferences Tilson attempts to draw from the situation. *See Graham,* 490 U.S. at 396 ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.").

Examining the situation objectively based on the circumstances presented to DeJong, Tilson did present a danger to DeJong and to others. Tilson drove his car into the backyard of house in a residential area (apparently this was Tilson's own backyard, but DeJong did not know that at the time). Tilson then continued to flee. At this point all DeJong knew was that Tilson was in all probability intoxicated (although his physical movements did not seem to be impaired by his drunkenness) and for some reason seemed intent on escaping arrest (which could also be a sign of impaired judgment). But Tilson could have possessed a weapon, or he could have been fleeing because he was wanted for other, more serious crimes. Even though DeJong knew only that Tilson had committed several traffic violations in his immediate presence, that his operation of his vehicle was impaired, and that he fled the scene when stopped, he "did not know the extent of crimes that [Tilson] might have committed nor did he know whether [Tilson] was armed.... [Tilson's] extreme behavior provided cause for [DeJong] to believe that [Tilson] was involved in activity considerably more nefarious than mere traffic violations .... a

---

on this occasion becomes a Class D felony. *See* Ind.Code § 9–30–5–3.

reasonable officer under the circumstances would have believed that [Tilson] posed a threat to the officer's safety as well as the safety of others," and DeJong would have been derelict in his duty if he did not make every reasonable effort to apprehend him immediately. *Matthews,* 35 F.3d at 1051. The potential for volatility was great, and the options for DeJong were few. Given the danger Tilson posed to others in the (residential) area, and Tilson's repeated attempts evade arrest by fleeing from DeJong, DeJong's use of his K–9 to apprehend and then momentarily detain Tilson was not objectively unreasonable, and did not constitute excessive force. *See Miller,* 340 F.3d at 968; (use of K–9 to bite and hold traffic violation suspect who fled not unreasonable); *Jarrett,* 331 F.3d at 150–51 (same); *Matthews,* 35 F.3d at 1051 (same); *see also Mason,* 13 F.Supp.2d at 836 (use of a K–9 to apprehend concert-goer suspected of gate-crashing not objectively unreasonable).

Thus we conclude that Tilson did not suffer a constitutional injury. And because Tilson did not suffer a constitutional injury, Elkhart cannot be liable for any physical injuries Tilson suffered because of Elkhart's K–9 policy, *see City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (damages cannot be awarded against a municipal corporation "based on the actions of its officers when [the court concludes] that the officer inflicted no constitutional harm"). Similarly, we need not decide whether DeJong would be entitled to qualified immunity, as no constitutional injury was inflicted. *See Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (absent a constitutional injury, qualified immunity analysis is unnecessary).

Accordingly, the district court's decision to grant summary judgment to the defendants is AFFIRMED.

