Michael Wayne STRICKLAND,
Plaintiff

v.

Jeremy SHOTTS, Defendant.

No. 4:03cv0026 AS.

United States District Court,
N.D. Indiana,
Hammond Division.

Nov. 24, 2004.

Michael L Parkinson, Lafayette, IN, for Plaintiff.

Michael F. Deboni, Goshen, IN, William W. Kurnik, Des Plaines, IL, E. Nelson Chipman, Jr., Elkhart, IN, for Defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

The complaint in this case was filed on or about April 4, 2003 by counsel for Michael Wayne Strickland purporting to state a claim under 42 U.S.C. §§ 1983, alleging that Defendants were "persons acting under color of state law and that Defendants" actions constituted a willful and wanton infliction of harm on the Plaintiff and an excessive use of force involving an arrest in violation of Plaintiff's rights secured by the Fourth Amendment of the Constitution of the United States. Where by Order of this Court, Elkhart City Police Department Officer Chris Snyder was dismissed as a defendant from this lawsuit on March 9, 2004, and subsequently Elkhart County Sheriff's Department Officers Scott Hashberger and Sean Holmes were also dismissed as defendants from this lawsuit on April 26, 2004. The only defendant remaining is Jeremy Shotts, an Elkhart County Sheriff's Department Deputy Sheriff. Presently, cross motions for summary judgment have been filed where Plaintiff's Motion for Summary Judgment was filed on July 30, 2004, and Defendant's response and motion for summary judgment was filed on September 2, 2004. Oral argument was had by this Court on October 20, 2004.

### I. Background

The affidavit filed by the plaintiff, Michael Wayne Strickland on October 20, 2004 falls far short of laying the appropriate factual setting of the events in question. First, there is no question that this defendant, Jeremy Shotts and the other officers had probable cause under the Fourth Amendment of the Constitution of the United States to effect an arrest and to take this plaintiff into custody. See *Bovey v. City of Lafayette*, 586 F.Supp. 1460 (N.D.Ind.1984) *aff'd by unpublished*

*order* 774 F.2d 1166 (7th Cir.1985). The counter-affidavit of the defendant fills in some of the gaps. However, more revealing are the proceedings in the Elkhart Superior Court No. 4 in Elkhart County, Indiana on March 18, 2002 which includes the sworn testimony of this plaintiff, particularly under the questioning of the judge of that court, the Honorable Olga H. Stickel. At the very least, that proceeding constitutes a judicial admission by this plaintiff that is highly relevant.

The questioning there of Mr. Strickland by his own attorney, Philip L. Miller, beginning at the bottom of page eight of that transcript and concluding on page eleven reveal those judicial admissions:

Q: Mike, on April 7th, 2001, were you driving an automobile that day?

A: Yes, sir.

Q: And was that in the east side of Elkhart?

A: Yes. Yes, sir.

Q: And do you agree that was in Elkhart County, Indiana?

A: Yes, sir.

Q: And at the time you were driving the vehicle, you were aware, weren't you, that your driving privileges had been suspended?

A: Yes, sir.

Q: And have you also suffered a prior Driving While Suspended infraction within ten (10) years of the date of this offense?

A: Yes, sir.

Q: And at the time you were driving or operating the vehicle that day, did there come a time when an officer made an attempt to stop your vehicle?

A: Yes, sir.

Q: And despite that, did you continue driving and disregarding the officer's signal to stop you?

A: Yes, sir.

Q: Do you agree that that constitutes Resisting Law Enforcement?

A: Yes, sir.

Q: And also on the same day and time that you were operating the motor vehicle, did you consume alcohol, or alcoholic beverages that impaired your thoughts, actions and faculties to such extent that you endangered any person?

A: Yes, sir.

Q: And did that occur here in Elkhart County and State of Indiana?

A: Yes, sir, it did.

ATTY. MILLER: No further questions on the factual basis.

THE COURT: All right. Anything else, Mr. Pringle?

PROS. PRINTLE: No, thank you, Judge.

THE COURT: All right. The Court will take this under advisement, and I know you have been incarcerated for quite awhile. Actually, it is not the normal practice of this Court to allow someone to stay incarcerated that long without the matter being resolved somehow. I would have set this for trial earlier. So, I'm going to try to expedite this Presentence report. Probably the earliest that I can do it is the 8th; I'd like to do it the 1st. I don't know if that's . . .

ATTY. MILLER: We don't—he's just . . . it doesn't make any difference to him.

THE COURT: And I guess I'll ask you, Mr. Miller, if I do it on the 8th, that means you'll need to come over here at 1:15 and then go back to jail.

ATTY. MILLER: I would prefer not. We've already talked about it. He's okay with it; we can do it a week later. Is that all right?

MR. STRICKLAND: It doesn't matter.

THE COURT: It doesn't matter to you?

MR. STRICKLAND: I've been there so long.

THE COURT: Yeah, you have. Okay. April 15th at 1:15 sentencing. Okay?

ATTY. MILLER: Okay.

THE COURT: Diane, I'd like that file back. I'd like to talk to Cammi about it.

Also of importance is Mr. Strickland's written plea agreement dated March 18, 2002 revealing the Defendant's voluntary act of entering into a plea of guilty to the crimes of Operating While Intoxicated, Resisting Law Enforcement, and Driving While Suspended. Furthermore, in the Plaintiff's motion for summary judgment, a number of items have been placed before the Court. The affidavit of Christopher Snyder explicates the setting of this event on April 7, 2001 in ten numbered paragraphs which are set out here:

1. On April 7, 2001, I was a police officer employed by the City of Elkhart Police Department. I am currently still a police officer with the City of Elkhart Police Department.

2. On April 7, 2001, I was involved in the pursuit and eventual arrest of Michael Wayne Strickland. I was engaged in the pursuit and eventual arrest of Mr. Strickland along with the officers of the County Sheriff's Department as well as other City of Elkhart Police Department officers.

3. During the pursuit of Mr. Strickland, myself as well as other individuals were put in danger. The pursuit was both a vehicular pursuit as well as a foot pursuit.

4. At one point in time Mr. Strickland attempted to evade the pursuing officers by running into a residence. There were several officers, including myself, who were involved in the pursuit of Mr. Strickland. Myself, as well as other police officers, followed Mr. Strickland into that residence.

5. Inside that residence Mr. Strickland was order to comply with the officers' commands. He refused to do so. At that point in time several officers attempted to restrain Mr. Strickland for the purposes of effecting an arrest.

6. In attempting to restrain Mr. Strickland I was positioned towards the left shoulder of Mr. Strickland, Officer Holms was on Mr. Strickland's right shoulder and Officer Hashberger was behind me. During this time the officers were instructing Mr. Strickland to show them his hands.

7. Eventually Mr. Strickland began to comply with the officers' commands. Mr. Strickland was then brought to his feet.

8. At no point did I order the K–9 known as Rexo to help subdue Mr. Strickland. At no point did I participate in any decision making regarding ordering the K–9 known as Rexo to help subdue Mr. Strickland.

9. At no point prior to the K–9 known as Rexo becoming involved and subduing Mr. Strickland did I know that Rexo was instructed to do so. At no time do I remember hearing any commands or any indication one way or another that the K–9 known as Rexo was about to bite Mr. Strickland.

10. After Mr. Strickland was brought to his feet he was taken and placed in the rear of a patrol car. Mr. Strickland was then transported to Elkhart Hospital for treatment.

The record reflects the additional undisputed facts: that on April 7, 2004, Officer Jeremy Shotts, while on duty with the Elkhart County Sheriff's Department, also responded to a request to assist other officers in a pursuit involving the fleeing

suspect Strickland, where eventually while in the residence Shotts ordered or caused to have ordered, the K–9 to bite the lower left leg of Strickland during his apprehension. Based upon the use of the K–9, in his Complaint, Strickland claims that the Defendant violated his Fourth Amendment right to be free from excessive force in seizing him.

## II. Standard of Review

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bragg v. Navistar Int'l Trans. Corp.*, 164 F.3d 373 (7th Cir.1998). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, " 'with or without supporting affidavits,' " the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting FED.R.CIV.P. 56); *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497 (7th Cir.1998). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has met the initial burden, the opposing party must " 'go beyond the pleadings' " and " 'designate 'specific facts that show that there is a genuine [material] issue for trial.' ' " *Id.* The nonmoving party cannot rest on its pleadings, *Weicherding v. Riegel*, 160 F.3d 1139 (7th Cir. 1998); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918 (7th Cir.1994); nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir. 1995).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir.1996). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252–55, 106 S.Ct. 2505.

Where, as here, both parties in this action have moved for summary judgment pursuant to Fed.R.Civ.P. 56, this court is not required to grant judgment as a matter of law for once side or the other. *Horn Farms, Inc. v. Veneman*, 319 F.Supp.2d 902 (N.D.Ind.2004) citing *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2nd Cir.1993); *Judsen Rubber Works, Inc. v. Manufacturing, Prod. & Serv. Workers Union Local No. 24*, 889 F.Supp. 1057, 1060 (N.D.Ill.1995). Rather, the court must evaluate each party's motion on its own merits, resolving factual uncertainties and drawing all reasonable inferences against the party whose motion is under consideration. *Horn Farms, Inc.*, 319 F.Supp.2d at 911, citing *Heublein*, 996 F.2d at 1461; *Judsen*, 889 F.Supp. at 1060; *Buttitta v. City of Chicago*, 803 F.Supp. 213, 217 (N.D.Ill.1992), *aff'd*, 9 F.3d 1198 (7th Cir.1993). In other words, the court must extend to each party the benefit of any factual doubt when considering the other's motion, a process that sometimes

forces the denial of both motions. *Id.* Applying the above standard, this Court addresses Defendant's motion.

### III. Discussion

Shotts claims that his action of ordering his K–9 dog, Rexo, to bite Strickland, while assisting other officers in the arrest of Strickland, was objectively reasonable in light of the facts and circumstances confronting him, and therefore there is no violation of Strickland's Fourth Amendment rights. Furthermore, Shotts ultimately contends that the record as a whole reveals that no genuine issue of material fact exists; therefore, Plaintiff's Motion for Summary Judgment should be denied, and Defendant's Motion for Summary Judgment should be granted.

#### a) State Action

Beyond any question there is so-called state action in this case as indicated in the proceedings that were had in open court in South Bend, Indiana on October 20, 2004. *See West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (citing *Lugar v. Edmondson Oil Co.* for the proposition that in order to constitute state action, " 'the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible,' " and " 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.' " *Lugar,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). Furthermore, State employment is generally sufficient to render the defendant a state actor when the public employee is acting in his official capacity or is exercising his responsibilities pursuant to state law. *West v. Atkins,* 487 U.S. 42, 50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). In this case, it is undisputed that on April 7, 2004, Officer Jeremy Shotts, while on duty with the Elkhart County Sheriff's Department, responded to a request to assist other officers in a pursuit involving the fleeing suspect Strickland, where eventually Shotts ordered or caused to have ordered, the K–9 to bite the leg of Strickland during his apprehension. It is clear that Defendant Shotts was acting in his capacity as an employee of the Elkhart County Sheriff's Department when he exercised this power possessed by virtue of state law, and therefore Shotts is a person who may fairly be said to be a state actor.

#### b) 4th Amendment prohibition of Excessive Force

As indicated, the sufficiency of Strickland's allegation that Shotts acted under color of state law in ordering his K–9 dog to bite Strickland is not contested here. Having satisfied this element of the §§ 1983 claim, this Court must once again wade through the very difficult concept of excessive force used by officers in order to apprehend suspects. It is important to note the distinction between the Fourth Amendment " 'excessive force' " analysis to be applied in cases like the instant case that concern the arrest of a suspect or the seizure of an individual, *See Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), as opposed to the Eighth Amendment " 'deliberate indifference' " standard that applies to prisoners and prohibits cruel and unusual punishment as originally enunciated by the Supreme Court of the United States in *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) and later in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), as well as *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (concerning the placement of inmates in a situation of substantial risk of harm). The instant action does not arise under the Eighth Amendment analysis applied by the Supreme Court in the three cited cases, and as applied by this circuit in *McGill v. Duckworth,* 944

F.2d 344 (7th Cir.1991), *cert. denied,* 503 U.S. 907, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992) and more recently in *Riccardo v. Rausch,* 375 F.3d 521 (7th Cir.2004), however they serve as binding precedent regarding civil rights suits analyzed under 42 U.S.C. §§ 1983. Because the Fourth and the Eighth Amendment rights have been incorporated by the due process clause of the Fourteenth Amendment, state officials are subject to §§ 1983 lawsuits under these amendments.

This is a police canine dog bite case argued solely under the Fourth Amendment of the Constitution of the United States. The United States Supreme Court has described the standard for determining whether police officers have violated the Fourth Amendment during an arrest, which depends upon the resolution of two issues: (1) In using force, did the officials " 'seize' " the suspect within the meaning of the Fourth Amendment? and (2) Was the force objectively reasonable. *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); and *See* and compare *Tilson v. City of Elkhart,* 317 F.Supp.2d 861 (N.D.Ind.2003), *aff'd by unpublished order,* 96 Fed.Appx. 413 (7th Cir.2004). In *Tilson,* a motorist was bitten by police dog, while being apprehended for drunk driving and resisting arrest, and subsequently sued the municipality and arresting officer under §§ 1983. *Id.* This court granted defendant's motion for summary judgement and held that: (1) the municipality was not liable under Fourth or Fourteenth Amendments; (2) the officer had probable cause to arrest motorist, precluding claim; (3) the police officer did not use excessive force when he employed police dog to subdue motorist after he fled on foot; (4) in any event, officer had qualified immunity from excessive force suit; (5) the search and seizure provisions of Indiana constitution were not violated; and that (6) the officer did not commit assault and battery. Judgment for defendants. *Id.*

In the instant case, the facts as indicated make it clear that upon apprehending Strickland, the arresting officers applied physical force and seized him. See *Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (holding that an officer has seized an individual if the officer has by means of physical force or show of authority has in some way restrained the liberty of a citizen); and *Brower v. County of Inyo,* 489 U.S. 593, 597, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (holding that the use of a roadblock to stop fleeing motorist constituted a seizure where there was a governmental termination of the freedom of movement through means intentionally applied). Ultimately, determining whether officers used unreasonable force when they seized a suspect, as Strickland was seized after fleeing from the police both by vehicle and by foot, is a fact-specific inquiry using the Fourth Amendment objective standard of reasonableness. The standard requires a balancing of interests, evaluating the circumstances present at the time the officers act, and allowing the officers some deference because they often have to make split-second judgments. *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (articulating three non-exhaustive factors that are relevant for determining the reasonableness of force: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight).

### c) Qualified Immunity Defense

In Plaintiff's Brief in Support of Plaintiff's Motion for Summary Judgment, counsel for the plaintiff raised the potential issue of Shotts' ability to raise an

affirmative defense of qualified immunity granted to government officials in §§ 1983 suits which allege constitutional violations, as addressed under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (establishing the objective standard for qualified immunity) and *Rakovich v. Wade,* 850 F.2d 1180 (7th Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). However, during the process of the oral argument, it appeared that counsel for the Defendant, although mentioning these authorities, was not pressing an argument of government official immunity.[1] This Court has looked closely at this circuits holding in *Clash v. Beatty,* 77 F.3d 1045 (7th Cir.1996) (holding that the existence of an evidentiary dispute on whether it was objectively reasonable for a police officer to " 'shove' " the suspect into the police car during an investigatory stop barred an immediate appeal by the police officers from the denial of summary judgment) and must emphasize that the issue of qualified immunity is not the basis of the defendant's contentions here now and not the basis of this decision. The procedural setting and result in *Clash* certainly does not compel the granting of summary judgment to this plaintiff or indeed denying it to this defendant.

### d) The Case Law applied

A factually similar case was before Judge Hamilton in the United States District Court for the Southern District of Indiana as reflected in *Mason v. Hamilton County,* 13 F.Supp.2d 829 (S.D.Ind.1998) (denying plaintiff/arrestee's motion for judgment as a matter of law, where under the controlling principles of Fourth Amendment law when evaluating the reasonableness of the use of the police dog to apprehend the arrestee, the jury was responsible for weighing the force used by police in ordering a police dog to attack, bite and hold the arrestee, the seriousness of the crimes in issue, the presence or absence of threats to safety, and the arrestee's flight from the officer). It has also been brought to the Court's attention by counsel that Chief Judge McKinney in a case number 3:03cv755 LJM–VSS on November 25, 2003 reached a contrary result from that of *Mason* in similar but not identical facts in *Pond v. Board of Trustees of Ball State University,* 2003 WL 23220730 (S.D.Ind.). This Court has taken the trouble to acquire the full decision of Chief Judge McKinney in *Pond,* and it certainly supports the same result here.[2] It also needs to be remembered that 18 years ago, the Supreme Court of the United States basically took the concept of negligence out of litigation under 42 U.S.C. §§ 1983 in *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), and *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 677, 88 L.Ed.2d 662 (1986) (holding that the due process clause is not implicated by a state official's negligent act causing unintended loss of or injury to life, liberty, or property).

Certainly the decisions of Chief Judge McKinney and Judge Hamilton in the

---

1. *See* and compare *Tilson v. City of Elkhart,* 317 F.Supp.2d 861 (N.D.Ind.2003), *aff'd by unpublished order,* 96 Fed.Appx. 413 (7th Cir. 2004) (holding that the doctrine would have shielded officials from civil damages liability where even had plaintiff suffered a constitutional injury, an objectively reasonable official would have believed that his conduct was lawful in light of clearly established law and the information that the official possessed at the time of his allegedly unlawful conduct).

2. In pertinent part, the Court granted the Defendant's Motion to Dismiss in its entirety because the Police Chief was immune from a negligence claim because his allegedly negligent behavior occurred within the scope of his employment. *Pond v. Board of Trustees of Ball State University,* 2003 WL 23220730 (S.D.Ind.).

Southern District of Indiana are entitled to respectful attention that are not binding precedents here. This Court has given close attention to both *Mason, supra,* and *Pond, supra.* In *Pond,* there are certainly issues regarding individual liability for any constitutional deprivation resulting from an arrest under *Rascon v. Hardiman,* 803 F.2d 269 (7th Cir.1986) that are not apparent here. Certainly there is no issue here under *Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that a municipality cannot be held liable under §§ 1983 on a respondeat superior theory, and that in order to maintain a §§ 1983 claim against the municipality or against the officer in his official capacity, the plaintiff must demonstrate than an official policy or custom was the cause of his constitutional injury); and there is no issue here under the Indiana Tort Claims Act, Indiana Code 34–13–3–5(b) because a police officer, in the lawful discharge of his duties, is privileged to use that force which is reasonably necessary to effect an arrest. *City of South Bend v. Fleming,* 397 N.E.2d 1075 (Ind.App.1979); *Bushong v. Williamson,* 790 N.E.2d 467 (Ind.2003) as cited in *Pond, supra.* As indicated, there was an abundant basis for probable cause here. See *Bovey v. City of Lafayette,* 586 F.Supp. 1460 (N.D.Ind. 1984) *aff'd by unpublished order* 774 F.2d 1166 (7th Cir.1985). This Court has looked carefully at the proceedings in the Elkhart Superior Court No. 4 on March 18, 2002, where this Plaintiff entered pleas of guilty which are certainly to be considered admissions under the Federal Rules of Evidence. See *Country Mut. Ins. Co. v. Duncan,* 794 F.2d 1211 (7th Cir.1986). See also *Scholes v. Lehmann,* 56 F.3d 750 (7th Cir.1995) *cert. denied* 516 U.S. 1028, 116 S.Ct. 673, 133 L.Ed.2d 522 and *Rodriguez v. Schweiger,* 796 F.2d 930 (7th Cir. 1986) *cert. denied* 481 U.S. 1018, 107 S.Ct. 1899, 95 L.Ed.2d 506. This Plaintiff cannot here gainsay the effect of his State guilty pleas. He is bound by them.

Of particular and more recent concern here is *Riccardo v. Rausch,* 375 F.3d 521 (7th Cir.2004). This Court has chosen to look at this record in the light most favorable to the plaintiff, and does believe that notwithstanding the decision of Judge Hamilton in *Mason,* the majority opinion of the en banc Court of Appeals this year at 375 F.3d 521 requires this Court to **GRANT** summary judgment in favor of this defendant and against this plaintiff, recognizing this as a very close case, especially in view of the respect which must given the four-judge dissent in the en banc *Riccardo* decision. However, this Court must consider the decision of Judge Easterbrook for the en banc majority as the binding precedent here and that decision, in the view of this Court, requires the granting of summary judgment to this defendant. Thus, the defendant's motion for summary judgment is **GRANTED.** Plaintiff's motion for summary judgment is **DENIED.** The Clerk shall enter judgment in favor of the defendant against the plaintiff, and each party will bear its own costs. **IT IS SO ORDERED.**